UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
RICHARD VITRANO,                    :      06 Civ. 6518 (JCF)
                                    :
            Plaintiff,              :      MEMORANDUM
                                    :      AND  ORDER
      - against -                   :
                                    :
UNITED STATES OF AMERICA,           :
                                    :
            Defendant.              :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     This case concerns the fate of property allegedly seized
during a search by agents of the Federal Bureau of Investigation
(the "FBI").  The plaintiff, Richard Vitrano, brings this case pro
se, claiming the United States has wrongfully retained his
belongings and must return them or pay him damages for their loss.
He asserts claims under Rule 41(g) of the Federal Rules of Criminal
Procedure and pursuant to the Federal Tort Claims Act (the "FTCA"),
28 U.S.C. §§ 1346(b), 2401(b), 2671-2680.  (Motion to Order Return
of Seized/Confiscated Property ("Complaint"); Amended Complaint
("Am. Compl.")). The parties consented to proceed before me for all
purposes pursuant to 28 U.S.C. § 636(c).  The United States now
moves for summary judgment in connection with the plaintiff's
claims for the return of five paintings, a Rolex watch, and cash in
the amounts of $351.00 and $875.00.  The United States also moves
to dismiss the plaintiff's claims under the FTCA.  The defendant's
motion for summary judgment is granted in part and denied in part,

1

and its motion to dismiss is granted.

Background

    A.  Facts

On April 26, 2005, the FBI, the United States Marshals Service, and Terence Kenny, Mr. Vitrano's probation officer at the time, arrested Mr. Vitrano for a violation of the conditions of a supervised release term he was serving in connection with an earlier conviction for transporting stolen property in interstate commerce. (The United States' Local Rule 56.1 Statement of Undisputed Facts ("Def. Facts"), ¶ 1; Declaration of James P. Wynne dated Jan. 29, 2009 ("Wynne Decl."), ¶ 6; Plaintiff's Opposition to Local Rule 56.1 Statement of Undisputed Facts ("Pl. Facts"), ¶ 1). At the same time, these government agents executed a search warrant at Mr. Vitrano's Manhattan loft located at 344 Bowery Street, seeking evidence of a suspected art fraud scheme. (Def. Facts, ¶¶ 1-2; Wynne Decl., ¶ 5, 7; Pl. Facts, ¶ 1). The government seized many items during the search, including $351.00 in cash and 57 paintings that Mr. Vitrano later forfeited when he ultimately pled guilty. (Def. Facts, ¶ 4; Receipts for Property Received/Returned/Released/Seized ("Seized Property Receipts"), attached as Exh. 7 to Wynne Decl., at 5, 7, 9-11).

Mr. Vitrano claims that during this search and arrest, Officer Kenny took a Rolex watch and $875.00 cash either from his person or

from elsewhere in the loft.[1]  According to Mr. Vitrano, Officer Kenny then told him, "You are going to jail, the jail will not let you have personal property.  I will hold onto your cash and watch and give them to your attorney in court."  (Complaint at 1; Statement of Evidence, ¶ 11 (offering statement of Officer Kenny that he took the items for "safe-keeping"); Pl. Memo. at 11 (same)).  Later, at a hearing, Mr. Vitrano asked Officer Kenny about the watch and the $875.00, and was told "The FBI has instructed me not to give you back your property."  (Complaint at 1).  The United States denies this account entirely, claiming it has never possessed either the Rolex watch or the $875.00.[2]  (Def. Facts, ¶¶ 3, 5).  The receipts for items seized during the search list a "Rolex billfold," but not a watch.  (Seized Property Receipts).  Similarly, there is no listing for $875.00 in cash.

---

[1] It is not entirely clear from where Mr. Vitrano claims the watch and cash were taken.  In his original complaint, Mr. Vitrano said he "was wearing a gold Rolex wristwatch and watchband and had $875.00 on his person" when he was arrested.  (Complaint at 1).  Since then, Mr. Vitrano has instead stated that "the watch was in [its case] at the time of the raid on my loft."  (Statement of Evidence of Richard Vitrano dated January 12, 2007 ("Statement of Evidence"), attached as Exh. 2 to Declaration of Jean-David Barnea dated Jan. 29, 2009 ("Barnea Decl."), ¶ 11; Plaintiff's Opposition to the United States Memorandum of Law in Support of its Motion for Summary Judgment on the Initial Complaint and its Motion to Dismiss the Amended Complaint ("Pl. Memo.") at 11).

[2] The government has also submitted evidence that, in state court, Mr. Vitrano claimed these items were taken by a number of private individuals, not by the government.  (Vitrano v. 344 Bowery LLC, Complaint dated July 5, 2006("State Complaint"), attached as Exh. 9 to Barnea Decl., ¶ 15).

(Seized Property Receipts).

During the search, the FBI also seized six paintings from two storage sites found at 83 East 3rd Street and at 25 East 10th Street.  (Amended Complaint ("Am. Compl.) at 2-4).  According to the United States, "one of [Mr.] Vitrano's associates arrived at the loft [during the search] and informed the agents that [Mr.] Vitrano had stored two additional boxes containing paintings at [a] . . . 'mail drop.'"  (Def. Facts, ¶ 6).  An FBI agent accompanied the associate to that site, where "the associate retrieved the boxes from the mail drop, brought them back to the loft, and delivered them into the FBI's custody."  (Def. Facts, ¶ 7).  The FBI later learned that additional items were stored at another "mail drop" site, and the FBI "ultimately seized four boxes, each containing one painting" from that site.  (Def. Facts, ¶ 10).  Mr. Vitrano, on the other hand, argues that the government simply illegally searched both of the storage locations without a warrant. (Pl. Memo. at 9, 11).

The United States submits that these six paintings are all misattributed in the same manner as the paintings involved in Mr. Vitrano's art fraud scheme (for which the plaintiff was later convicted).  One of the paintings is not in dispute here; the parties agree that it is a forgery and thus worthless, and Mr. Vitrano does not request its return.  (Def. Facts, ¶ 16).  As to the other five, the government presents expert testimony that the

artist's signature on each painting is false and was added long after the painting's completion. (Appraisal Consultation Report of Leon Castner dated Dec. 14, 2008, attached as Exh. 4 to Barnea Decl., at 4, 10-13; Declaration of Guy A. Wiggins dated Dec. 18, 2008, ¶ 13). In response, Mr. Vitrano claims that he bought these paintings legally and retains ownership of them. (Am. Compl. ¶ 5; Pl. Memo. at 7-8; Pl. Facts, ¶ 14). He also disputes that the government's experts are qualified to determine the authenticity of the paintings. (Pl. Memo. at 8).

Once the search was complete, the government secured the loft. According to Mr. Vitrano, the government wrongfully left Paul Tsombanidis and Sneha Amin in control of the premises, and these individuals then stole much of the remaining property. (Pl. Memo. at 9, 12, 14). Mr. Vitrano describes Mr. Tsombanidis as his former business partner and a former co-lessor of the loft; Ms. Amin is said to be Mr. Tsombanidis' girlfriend. (Am. Compl., ¶ 7; Pl. Memo. at 9, 12). The plaintiff claims that the government colluded or was tricked into giving Mr. Tsombanidis control of the loft and of Mr. Vitrano's business, RV Fine Art,[3] and that the government should have done further research before transferring possession of

---

[3] It appears that Mr. Vitrano used the RV Fine Art business to sell both legitimate works of art and misattributed paintings that formed the basis of his wire fraud crime. (Hearing Transcript dated Feb. 15, 2006 ("2/15/06 Tr."), attached as Exh. A to Supplemental Declaration of Jean-David Barnea dated March 13, 2009 ("Barnea Supp. Decl."), at 12-13).

the loft and business to such an ill-suited individual.  (Am. Compl. at ¶¶ 7, 10).

On December 5, 2005, Mr. Vitrano pled guilty to wire fraud related to selling misattributed art and to a violation of supervised release.  (Hearing Transcript dated Dec. 5, 2005 ("12/5/05 Tr."), attached as Exh. 3 to Barnea Decl., at 17-18).  On February 15, 2006, he was sentenced to a prison term followed by supervised release, and he was ordered to pay $193,902.00 in restitution and a $100.00 special assessment.  (Judgment in Criminal Case filed March 8, 2006 ("Wire Fraud Judgment"), attached as Exh. B to Declaration of Herman Amos, Jr. dated Jan. 26, 2009 ("Amos Decl."), at 1-4).  In connection with his prior conviction for conspiracy to transport stolen property, Mr. Vitrano's sentence included a $76,513.00 order of restitution and a $50.00 special assessment.  (Judgment in Criminal Case signed on October 5, 1998, attached as Exh. A to Amos Decl., at 1, 5).

B. Procedural History

During the summer of 2006, Mr. Vitrano filed the instant case in which he demanded the return of property under Rule 41(g) of the Federal Rules of Criminal Procedure, including the five paintings, the $351.00, the Rolex watch, and the $875.00 currently at issue. In December 2008, he submitted an Amended Complaint in which he added the FTCA claims.  The Honorable John G. Koeltl, U.S.D.J., decided a prior motion for summary judgment in this case on

6

September 28, 2007.[4]  The United States now moves again for summary judgment on the Rule 41(g) claims and moves to dismiss Mr. Vitrano's FTCA claims.

Discussion

   A.   Summary Judgment Standard

      Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); accord Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002); Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co., 189 F.3d 208, 214 (2d Cir. 1999).  The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The opposing party then must come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Where the non-movant fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted.  Celotex, 477 U.S. at 322.

---

      [4] For a more detailed procedural history, see Vitrano v. United States, No. 06 Civ. 6518, 2008 WL 1752221, at *1-2 (S.D.N.Y. April 16, 2008).

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Vann v. City of New York</u>, 72 F.3d 1040, 1048-49 (2d Cir. 1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," <u>Anderson</u>, 477 U.S. at 249 (citation omitted), and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. <u>Id.</u> at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 288 (1968)).

To be sure, "credibility assessments, choices between conflicting versions of the events, and the weighing of evidence" are generally "matters for the jury, not for the court on a motion for summary judgment." <u>McClellan v. Smith</u>, 439 F.3d 137, 144 (2d Cir. 2006) (quoting <u>Fischl v. Armitage</u>, 128 F.3d 50, 55 (2d Cir. 1997)). But, "where a plaintiff's testimony was 'largely unsubstantiated by any other direct evidence' and 'so replete with inconsistencies and improbabilities that no reasonable juror would

undertake the suspension of disbelief necessary to credit the allegations made in his complaint,' the court may grant a defendant's motion for summary judgment." Chapel Park Villa, Ltd. v. Travelers Insurance Co., No. 02 Civ. 407, 2006 WL 2827867, at *7 (W.D.N.Y. Sept. 29, 2006) (quoting Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005)).  According to the Second Circuit,

> While it is undoubtedly the duty of district courts not
> to weigh the credibility of the parties at the summary
> judgment stage, in the rare circumstance where the
> plaintiff relies almost exclusively on his own testimony,
> much of which is contradictory and incomplete, it will be
> impossible for a district court to determine whether the
> jury could reasonably find for the plaintiff, and thus
> whether there are any genuine issues of material fact,
> without making some assessment of the plaintiff's
> account.

Jeffreys, 426 F.3d at 554 (quotation marks and citations omitted).

Where a litigant is pro se, his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment, and a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)); accord Gittens v. Garlocks Sealing Technologies, 19 F. Supp. 2d 104, 110 (W.D.N.Y.

9

1998).

In addition, the court's review of the record is limited to facts that would be admissible at trial.  Rule 56(e) states that affidavits in support of or against summary judgment shall "set out facts that would be admissible in evidence."  Fed. R. Civ. P. 56(e).  Accordingly, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).

In this case, the United States has moved for summary judgment regarding three sets of disputed items: five paintings seized by the government and not forfeited by Mr. Vitrano as part of his guilty plea; $351.00 found on Mr. Vitrano's dresser at the time the government searched his Bowery Street loft; and a Rolex watch and $875.00 which the government disputes ever having possessed.

B.  Rule 12(b)(6) Standard

"[A] ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact."  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). Accordingly, the court must accept as true all factual allegations in the complaint, draw all reasonable inferences in favor of the plaintiff, and generally construe the complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, __, 127 S. Ct. 2197, 2200 (2007) (per curiam); Roth, 489 F.3d at 510.  Moreover, courts are typically expected to "look only to the allegations on the face of

10

the complaint," rather than to extrinsic sources.  <u>Roth</u>, 489 F.3d

at 509.  As a general rule, if "matters outside the pleading are

presented to and not excluded by the court" in support of a Rule

12(b)(6) motion, the court should treat the motion as one for

summary judgment pursuant to Rule 56 and allow an opportunity for

the parties "to present all the material that is pertinent to the

motion."  Fed. R. Civ. P. 12(d); <u>see also</u> <u>Friedl v. City of New</u>

<u>York</u>, 210 F.3d 79, 83-84 (2d Cir. 2000) (finding it erroneous for

court to rely on factual allegations outside of complaint in ruling

on Rule 12(b)(6) motion).

In certain limited circumstances, documents other than the

complaint may be considered by the court when adjudicating a Rule

12(b)(6) motion.  As recently explained by the Second Circuit,

> Documents that are attached to the complaint or
> incorporated in it by reference are deemed part of the
> pleading and may be considered.  In addition, even if not
> attached or incorporated by reference, a document upon
> which the complaint <u>solely</u> relies and which is <u>integral</u>
> <u>to the complaint</u> may be considered by the court in ruling
> on such a motion. . . .

> Similarly, where public records that are integral to a
> fraud complaint are not attached to it, the court, in
> considering a Rule 12(b)(6) motion, is permitted to take
> judicial notice of those records.  If the court takes
> judicial notice, it does so in order to determine <u>what</u>
> statements they contained -- but again <u>not for the truth</u>
> <u>of the matters asserted</u>.

<u>Roth</u>, 489 F.3d at 509 (citations and quotation marks omitted); <u>see</u>

<u>also</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir.

2002) (clarifying that plaintiff must rely on "the terms and effect

of a document in drafting the complaint" for the court to consider
unattached or unincorporated extrinsic document; "mere notice or
possession is not enough"); <u>Oxford Asset Management, Ltd. v.
Jaharis</u>, 297 F.3d 1182, 1188 (11th Cir. 2002) (ruling that
documents filed with Securities and Exchange Commission ("SEC")
could "only be considered to show their contents, not to prove the
truth of matters asserted therein"); <u>Kramer v. Time Warner Inc.</u>,
937 F.2d 767, 774 (2d Cir. 1991) (relying, in securities fraud
action, upon papers filed with SEC to determine contents of public
representations by defendant company, not for truth of statements).

   C.  <u>Five Paintings</u>

   The government currently retains in its custody five paintings
whose fate is in dispute.  These paintings were recovered from two
storage sites, located at 83 East 3rd Street and at 25 East 10th
Street.  (Am. Compl., ¶¶ 3-4, 6).  Mr. Vitrano argues that they
should be returned to him under Rule 41(g) of the Federal Rules of
Criminal Procedure or that he should recover damages for their loss
under the FTCA.

   1.  <u>Rule 41(g)</u>

   Under Rule 41(g), "[a] person aggrieved by an unlawful search
and seizure of property or by the deprivation of property may move
for the property's return."  However, there are exceptions to this
Rule.  The government argues in its summary judgment motion that
these paintings are "derivative contraband," or alternatively that

the plaintiff has "unclean hands," and thus that Mr. Vitrano is not entitled to recover the paintings.  (The United States Memorandum of Law in Support of its Motion for Summary Judgment on the Initial Complaint and its Motion to Dismiss the Amended Complaint ("Def. Memo.") at 15-16).

"[S]ociety recognizes no legitimate property interest in contraband." Matter of Search Warrant for Premises Located at 233 J.B. Wise Place, Misc. No. 1469, 1987 WL 20385, at *4 (N.D.N.Y. Nov. 23, 1987).  The courts have recognized two type of contraband. Contraband per se encompasses items that are intrinsically illegal. United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1212 n.13 (10th Cir. 2001).  Derivative contraband includes items "which are not inherently unlawful but which may become unlawful because of the use to which they are put." Id.   In either instance, the government has the right to retain the contraband property. See, e.g., In re Wiltron Associates, Ltd., 49 F.R.D. 170, 173 (S.D.N.Y. 1970) (affirming that government must retain corporate stock certificates used "in furtherance of criminal activity").[5]

_____

[5] The plaintiff cites an Eighth Circuit case, United States v. Felici, 208 F.3d 667 (8th Cir. 2000), to argue that neither the derivative contraband nor the unclean hands theory applies to Rule 41(g).  (Pl. Memo. at 7).  That case, however, is not binding on this Court.  While the Second Circuit has not directly addressed this issue, district courts within the circuit support applying both theories to motions brought under Rule 41(g).  See United States v. Giovanelli, 807 F. Supp. 351, 357 (S.D.N.Y. 1992), rev'd on other grounds, 998 F.2d 116 (2d Cir. 1993) (applying unclean hands theory); Matter of Search Warrant for 233 J.B. Wise Place, 1987 WL 20385, at *4(applying derivative contraband theory); In re

Each of the five paintings at issue bears an artist's signature.  The government, however, presents expert evidence that none of the paintings was actually painted by the artist whose name appears on it.  (Appraisal Consultation Report of Leon Castner dated Dec. 14, 2008, attached as Exh. 4 to Barnea Decl., at 4, 10-13; Declaration of Guy A. Wiggins dated Dec. 18, 2008, ¶ 13).[6] While Mr. Vitrano disputes the qualifications of these experts to submit their opinions, he does not present any evidence of his own regarding the paintings' authenticity.  (Pl. Memo. at 8).  The government has submitted sufficient evidence regarding the expertise of each of the two experts for the court to consider their opinions.  See Fed. R. Evid. 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-95 (1993) (discussing when expert evidence is admissible); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 146-49 (1999) (applying Daubert factors to all types of expert testimony).  Thus, for purposes of summary judgment, there is no issue of material fact as to whether the paintings at issue are, in fact, misattributed.

Such misattributed paintings formed the basis of the wire

---

Wiltron Associates, Ltd., 49 F.R.D. at 173 (same).

    [6] The government also submits additional evidence regarding the paintings and their use by Mr. Vitrano in the form of an affidavit from FBI Special Agent James P. Wynne dated January 29, 2009.  However, nearly all of the testimony Agent Wynne provides is hearsay and thus inadmissible at trial.  As a result, it cannot properly support a summary judgment determination.  See Fed. R. Evid. 802 & 803.

fraud charge to which Mr. Vitrano pled guilty. During his plea allocution, Mr. Vitrano admitted that he had sold paintings online that were "misattributed or the provenance was misidentified," knowing they were described incorrectly. (12/5/05 Tr. at 16-17). Each of the paintings currently at issue was found inside a box at either a mail drop or storage facility location connected with Mr. Vitrano's fraudulent business dealings. (Def. Facts, ¶¶ 6-7, 10; Seized Property Receipts at 5 (listing "[t]wo boxes w/ paintings inside" as recovered from "storage facility")). As such, the government may retain possession of the paintings as derivative contraband.

Mr. Vitrano's primary argument is that he bought the paintings legally at well-known auction houses. This is irrelevant to a determination of whether, once Mr. Vitrano gained possession, he used the paintings in such a way as to convert them into contraband.

2. FTCA

Mr. Vitrano recently amended his complaint to include claims for monetary damages under the FTCA for "[t]hefts," "[a]buse of process," and "[c]ollusion with private parties" by government agents. (Am. Complaint, ¶ 9). At least two of these claims -- for theft and abuse of process -- seem to include claims related to the five paintings. However, a federal court can only assert jurisdiction over an FTCA claim where the claimant has first

exhausted all available administrative remedies.  See 28 U.S.C. § 2675(a); Celestine v. Mount Vernon Neighborhood Health Center, 403 F.3d 76, 82 (2d Cir. 2005) (characterizing the exhaustion of administrative remedies as jurisdictional requirement under FTCA).

Documents incorporated by reference into Mr. Vitrano's Amended Complaint show that he filed an administrative complaint with the Department of Justice in April 2007 for claims "relating to the FBI raid of my loft/gallery on April 26, 2005 at 344 Bowery, Loft 4, New York, New York 10012."  (Letter From Richard Vitrano to Department of Justice dated April 5, 2007, attached as Exh. 6 to Barnea Decl.).  This claim is clearly geographically specific and thus does not incorporate claims for damages resulting from searches and seizures at other locations.  Accordingly, Mr. Vitrano's claims relating to illegal searches of storage locations at 83 East Third Street and at Tenth Street have not been exhausted, and his FTCA claims regarding the five paintings are dismissed for lack of subject matter jurisdiction.[7]

D. $351.00

Mr. Vitrano is also requesting the return of $351.00 seized when his apartment was searched.  (Def. Facts, ¶ 15; Seized Property Receipts at 7).  Neither party disputes that the government currently possesses the cash at issue.  However, in its

---

[7] Of course, even if this FTCA claim were properly before the Court, it would fail because Mr. Vitrano would be barred from obtaining damages for the loss of derivative contraband.

summary judgment motion, the government argues that, rather than return the money to Mr. Vitrano, it should be allowed to apply this amount to the restitution owed by the plaintiff for his criminal judgments in 1998 and 2006 -- a total of $290,988.33. (Def. Memo. at 17-18).   Mr. Vitrano objects, asserting that the 1998 restitution obligations have been fulfilled or waived; that the 2005 obligations are not yet effective because he has not received notice of a list of recipients; and that the proceeds from the sales of the 57 paintings forfeited pursuant to his 2005 guilty plea should be applied to the restitution requirement and should entirely fulfill his obligation.

Although a criminal defendant is "presumptively entitled to the return of his property once it is no longer needed as evidence, . . . the Government may retain the property if it has a legitimate reason for doing so, such as a valid restitution order." Lavin v. United States, 299 F.3d 123, 127-28 (2d Cir. 2002) (quotation marks omitted) (citing United States v. Mills, 991 F.2d 609, 612 (9th Cir. 1993)); see also Viola v. United States, No. 96 CV 706, 2003 WL 21143078, at *3 (E.D.N.Y. Jan. 29, 2003).   In fact, federal law creates a "lien on a defendant's property when a Court enters a valid restitution order" which presumptively overcomes the defendant's interest in the seized property.   Lavin, 299 F.3d at 128 (citing 18 U.S.C. § 3613(c).

17

a.   <u>1998 Judgment</u>

In 1998, Mr. Vitrano pled guilty to conspiracy to transport stolen property interstate and was ordered to pay $76,513.00 in restitution and a $50.00 special assessment. (10/5/98 Judgment at 1, 5). He and another individual, David Benisch, were found jointly and severally liable for the restitution. (10/5/98 Judgment at 7). The government presents evidence that, as of January 26, 2009, the special assessment had been paid in full and $4,715.60 had been paid toward restitution. (Supplemental Declaration of Herman Amos, Jr. dated March 13, 2009 ("Amos Supp. Decl."), ¶ 4). Mr. Vitrano and Mr. Benisch still owe $71,797.40 for this judgment. (Amos Supp. Decl., ¶ 4).

Mr. Vitrano argues that during sentencing on the 2006 conviction, the Honorable Michael B. Mukasey, Chief Judge, found that restitution in the earlier case had been fully satisfied. (Pl. Memo. at 4). During the sentencing hearing, Judge Mukasey did revoke the term of supervised release imposed in connection with the 1998 offense. (2/15/06 Tr. at 12). However, that action in no way affected the restitution component of the earlier sentence and Judge Mukasey did not otherwise discuss the 1998 judgment at that time. Thus, there is no doubt that Mr. Vitrano still owes $71,797.40 in restitution from the 1998 judgment.

b.   <u>2006 Judgment</u>

When Mr. Vitrano pled guilty to wire fraud in 2006 for selling

18

misidentified paintings, he was ordered to pay $193,902.00 plus interest in restitution and a special assessment of $100.00. (Wire Fraud Judgment at 4). The government presents evidence that Mr. Vitrano has paid $150.00 towards this judgment since 2006, and now owes $193,852.00 in principal and $25,338.93 in interest, for a total of $219,190.93. (Amos Supp. Decl., ¶ 6).

Mr. Vitrano argues that this restitution obligation is not chargeable against the seized $351.00 for two reasons. First, he contends that the obligation cannot go into effect until he receives a list of the restitution recipients. (Pl. Memo. at 4-5).[8] The statute governing the "procedure for issuance and enforcement" of a restitution order does require that such recipient information be included as part of the presentence report; moreover, the court must disclose to each party's attorneys "all portions of the presentence or other report pertaining" to restitution. 18 U.S.C. § 3664(a) and (b). However, Mr. Vitrano cannot here collaterally attack the restitution order on that

---

[8] The Court ordered Mr. Vitrano to pay $193,902.00 restitution "to the victims on the list maintained by the probation department," since the total amount owed was known but the presentence report did not list the victims' names and how much each was owed. (2/15/06 Tr. at 10). At the time, the prosecutor stated that the prosecution had provided the probation department with a "list of victims and how much" each was owed, though the probation department had not included that information in its report. (2/15/06 Tr. at 10). In the current case, the defendant has submitted with its motion a copy of the list of victims and the amount each will receive. (Restitution Recipient List, attached as Exh. A to Amos Supp. Decl.).

basis.  There is no nexus between the amount he is required to pay, based on the known damages from his crime, and the names of his individual victims or the amount each of them will ultimately receive.

Second, Mr. Vitrano argues that the amount owed in restitution should be first satisfied through the sale of the 57 paintings he forfeited in connection with his 2006 guilty plea.  (Pl. Memo. at 5). The government in fact plans to do this. (Def. Reply Memo. at 6).   However,  the  government  has  submitted  an  appraisal  by Stephanie A. Reeves, an art appraiser, finding the combined market value of all 57 paintings to be a mere $2,235.00.  (Appraisal Report  by  Stephanie  A.  Reeves  dated  February  2009  ("Reeves Appraisal"), attached as Exh. C to Declaration of Cynthia Bridges dated March 10, 2009, at 1).[9]  As the sale of the paintings will fall far short of satisfying the restitution obligation, there is no reason not to apply the $351.00 at issue here toward that obligation.

    E.   <u>Rolex Watch and $875.00</u>

Next, Mr. Vitrano moves for the return of a Rolex watch and $875.00, which he claims were taken by the government during his arrest and the search of his apartment.  Alternatively, Mr. Vitrano

---

[9] Many of the 57 paintings are unmarketable because they were "deceptively" signed or misattributed or for similar reasons; those remaining  are  generally  worth  only  their  "decorative"  value. (Reeves Appraisal).

claims monetary damages under the FTCA for "theft" and "abuse of process" relating to his losses.

    1.  <u>Rule 41(g)</u>

In response to Mr. Vitrano's claims, the government counters that it has never had the watch or the money in its possession, and that Mr. Vitrano has not presented evidence sufficient to create an issue of material fact. Moreover, Mr. Vitrano's evidence consists solely of his own testimony, which the government disregards as entirely incredible. The government moves for summary judgment on this basis.

Under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should generally continue to govern the same issues in subsequent stages in the same case." <u>Schwartz v. Chan</u>, 142 F. Supp. 2d 325, 329 (E.D.N.Y. 2001) (quoting <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983)). Though the doctrine is discretionary, <u>United States v. Williams</u>, 205 F.3d 23, 34 (2d Cir. 2000), it generally motivates courts "to refuse to reopen what has been decided." <u>Devilla v. Schriver</u>, 245 F.3d 192, 197 (2d Cir. 2001) (quoting <u>Messinger v. Anderson</u>, 225 U.S. 436, 444 (1912)).

In ruling on a prior motion for summary judgment in this case, Judge Koeltl found that, based on Mr. Vitrano's testimony, there was a disputed issue of fact regarding the fate of the watch and the cash. (Memorandum and Order dated Sept. 28, 2007 ("9/28/07

Order") at 9-10).   When he made this decision, Judge Koeltl was aware of the government's argument that "the plaintiff has made contradictory statements both on the record and in his verified pleading in his state court action with respect to this property." (9/29/08 Order at 9).   The government does not present any new evidence here to warrant revisiting that decision.

The government also argues that, even if the Court considers Mr. Vitrano's testimony, there is no evidence the government ever had possession of the watch or the money, and a plaintiff cannot recover property under Rule 41(g) if the government never possessed the items at issue.   (Def. Memo. at 20).   However, Mr. Vitrano specifically asserts that Officer Kenny took the watch and money and later told Mr. Vitrano he had given the Rolex to the FBI. (Complaint at 1; Statement of Evidence, ¶11;  Pl. Memo. at 11). Mr. Vitrano's testimony that Officer Kenny, a government agent, took these items at the time of his arrest is sufficient to create an issue of material of fact regarding whether the government possessed this property.

2.   <u>FTCA</u>

Mr. Vitrano also claims he is owed monetary damages under the FTCA for the disappearance of these items.   He first frames his argument as one for recovery for "theft," claiming that "[m]any items seized and confiscated by" the government's agents "remain

stolen and unaccounted for."[10]   (Am. Compl., ¶ 5).   Today, this
claim appears to encompass only the Rolex watch and $875.00.[11]   The
government counters that these theft claims are barred because the
United States has not waived sovereign immunity in "detention of
goods" cases.  (Def. Memo. at 24).   Mr. Vitrano maintains that the
United Stated is not immune because "there is no exception or
exemption [from liability] for crimes or criminal activity."  (Pl.
Memo. at 14).

        Second, Mr. Vitrano styles his claim as one for "abuse [of]
search warrant process," alleging that federal agents stole
"valuable property from his collection."  (Am. Compl., ¶ 6).[12]   This

_____

        [10] The claimed list of such items includes the Rolex watch; art
works; business documents needed to press his insurance claim;
furniture and fixtures; computer hardware and software; clothing
and personal items; art reference books; personal momentos and
photos; bank accounts and cash; and "[o]ther items to be
determined."  (Am. Compl., ¶ 5).

        [11] The government has indicated that these are the only items
still in dispute.  (Def. Memo. at 8-9, 10).  In his response to the
government's motion, Mr. Vitrano does not seem to disagree.  His
most specific reference to stolen property is to Officer Kenny's
"theft of the watch."  (Pl. Memo. at 14).   He does indicate that
other items of his property are missing, but seems to include this
other property under his "collusion" claims rather than under his
"theft" claims.  (Pl. Memo. at 12 ("[I]f the government does not
have certain property of mine in its possession then such property
has, by virtue of the collusion of the government, come into the
hands of third parties without my permission.")).  For example, Mr.
Vitrano specifically cites the disappearance of a baby grand piano
and a "twenty-foot long Chinese Coromandel screen," but seems to be
implying that the government failed to identify the thief rather
than that it committed the underlying theft.  (Pl. Memo. at 14).

        [12] To the extent this claim includes property originally
located in his loft, Mr. Vitrano is presumably referring to the

"abuse of process" claim is effectively indistinguishable from the "theft" claim, and the two are based on the same underlying facts.

Under the FTCA, the United States waives its sovereign immunity for torts committed by federal government employees. Specifically, it waives immunity for

> civil actions on claims . . . for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred

28 U.S.C. § 1346(b)(1).

However, the FTCA significantly curbs the government's waiver of immunity. With only limited exceptions, the government preserves its immunity in cases "arising in respect of . . . the detention of any goods, merchandise, or other property by . . . any . . . law enforcement officer." 28 U.S.C. § 2680(c). In such cases, sovereign immunity is only waived if (1) the property damage occurred while the property was in a law enforcement officer's possession, and (2) "the property was seized for the purpose of forfeiture, and was not forfeited and the claimant was not convicted of a criminal offense that would authorize forfeiture of the seized property." VanZandt v. Fish and Wildlife Services, No.

---

same property at issue in his theft claim -- namely, the Rolex watch and $875.00. (Pl. Memo. at 9 (accusing the government of abusing search warrant process to steal properties "that were left in loft #4" after search was completed)).

05 Civ. 6093, 2007 WL 670959, at *5-6 (W.D.N.Y. Feb. 28, 2007)(paraphrasing 28 U.S.C. § 2680(c)); see also Ali v. Federal Bureau of Prisons, __ U.S. __, __, 128 S. Ct. 831, 837-38 (2008) (affirming Congress' broad intention to "preserve immunity for claims arising from the detention of property" regardless of "the type of law being enforced").   Accordingly, federal courts are typically barred from asserting jurisdiction over claims concerning the detention of goods by a law enforcement officer.

Here, Mr. Vitrano's allegations regarding his Rolex and the $875.00 are precisely that: he claims that a law enforcement officer -- Officer Kenny or another government official -- stole his property.   As Mr. Vitrano has failed to show that these claims fall within the limited exceptions to 28 U.S.C. § 2680(c), this Court lacks subject matter jurisdiction to adjudicate them.   See VanZandt, 2007 WL 670959 at *6 (dismissing, for lack of jurisdiction, "allegations of theft" against government agents who conducted search pursuant to warrant).[13]   Thus, his claims must be dismissed.

F.   Other Items Missing From the 344 Bowery Loft

Finally, Mr. Vitrano accuses the government -- Agent Wynne in particular -- of colluding with Mr. Tsombanidis to grant him

---

[13] Despite Mr. Vitrano's argument that "the FTCA does not make exceptions for crimes such as theft or abuse of process" (Am. Compl., ¶ 8), a claim is barred if it falls under any exception to the Unites States' waiver of sovereign immunity.

control of the loft, thus facilitating his theft of Mr. Vitrano's property.  (Am. Compl., ¶ 10).   The government apparently did permit Mr. Tsombanidis to take possession of the loft on the basis of his claim to be co-lessor of the loft and co-owner of the RV Fine Art business; Mr. Vitrano seems to be referring specifically to this incident.  (Am. Compl., ¶¶ 7, 10; Pl. Memo. at 12).   The plaintiff requests money damages for property Mr. Tsombanidis and others allegedly stole from the loft.  (Am. Compl. at 9).   In its motion to dismiss, the United States counters that the actions alleged by Mr. Vitrano fall within the "discretionary function" exception to the FTCA's waiver of sovereign immunity.  (Def. Memo. at 26-31).  Alternatively, it argues that the alleged acts do not constitute a tort.  (Def. Memo. at 31-33).

The United States has not waived sovereign immunity for claims concerning a federal employee's execution of a "discretionary function or duty . . . , whether or not the discretion involved be abused."  28 U.S.C. § 2860(a).  In <u>Berkovitz v. United States</u>, 486 U.S. 531 (1988), and <u>United States v. Gaubert</u>, 499 U.S. 315 (1991), the Supreme Court established a framework for evaluating when the discretionary function exception applies.  Under the <u>Berkovitz-Gaubert</u> test, the discretionary function exception bars suits against the United States if (1) the allegedly negligent acts are "discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation" and (2)

26

"the judgment or choice in question [is] grounded in 'considerations of public policy' or susceptible to policy analysis." <u>Coulthust v. United States</u>, 214 F.3d 106, 109 (2d Cir. 2000) (quoting <u>Gaubert</u>, 499 U.S. at 322-23, and <u>Berkovitz</u>, 486 U.S. at 536-37). The conduct is not a result of choice if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." <u>In re Joint Eastern and Southern Districts Asbestos Litigation</u>, 891 F.2d 31, 36 (2d Cir. 1989) (quoting <u>Berkovitz</u>, 486 U.S. at 536).

In this case, the procedure used to secure the 344 Bowery loft after the FBI's search concluded was indeed discretionary. The FBI had to determine who, if anyone, should be left in charge of the loft and what other measures had to be taken to ensure the security of the loft and its contents. Moreover, determining the appropriate process for gathering and verifying information necessary to make that decision implicated public policy. Mr. Vitrano may believe that the FBI should have conducted additional investigation before leaving the apartment in Mr. Tsombanidis' control, but his disagreement with the government's discretionary acts and policy choices does not support a viable claim under the FTCA. Since securing the loft was a discretionary function, this Court does not have subject matter jurisdiction to consider Mr.

Vitrano's collusion claim.[14]

## Conclusion

For the reasons set forth above, the United States' motion for summary judgment is granted insofar as the government may retain the five paintings at issue and apply the $351.00 towards Mr. Vitrano's restitution obligations. The United States' motion for summary judgment is denied with respect to the plaintiff's claims under Rule 41(g) for return of the Rolex watch and the $875.00, and an evidentiary hearing will be scheduled to resolve those claims. The United States' motion to dismiss the plaintiff's FTCA claims is granted.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
April 14, 2009

---

[14] In a related state court proceeding, the Honorable Karen S. Smith determined that Mr. Tsombanidis was indeed a co-lessor of the loft at the time of the search. (Decision and Judgment of the Honorable Karen S. Smith dated Feb. 5, 2007, Index No. 403740/2006, attached as Exh. 10 to Barnea Decl., at 2). Given this factual finding, it was likely entirely proper for the agents to leave Mr. Tsombanidis in possession of the premises.

Copies mailed this date:

Richard Vitrano
Reg. No. 03031-018
FPC McKean
P.O. Box 8000
Bradford, Pennsylvania 16701

Jean-David Barnea, Esq.
United States Attorney's Office
86 Chambers Street, Third Floor
New York, New York 10007